United States District Court
Eastern District Of Tennessee
At Knoxville

FILED
2016 AUG 25 P 12:49
U.S. DISTRICT COURT
EASTERN DIST. TE.

Mike Settle
Plaintiff Pro-se

V.                              No. 3:16-cv-00250-RLJ-CCS

Shawn Phillips
Defendant

## Motion For Leave To Amend Complaint

Pursuant to Fed. R. Civ. P. Rule 15(a) the move the Court to amend complaint, to add:

1. The defendant Phillips have acted and continue to act under color of state law at all times relevant to this complaint.

2. The plaintiff was deprive of a right secured by the federal constitution or laws of the United States by defendant Phillips acting under color of state, federal laws.

3. The reason for plaintiff (17) years segregation indefinitely lockdown, its significance, both legally and factually, and its effects on him has caused physical injury, pain and suffering and psychological harm from isolation conditions of confinement.

4. The plaintiff have not been given any sentence credits or behavior and program PSRC in (17) years in segregation that has exceed plaintiff 45% sentence in an unexpected manner that has an "atypical and significant hardship on him in relation to the ordinary incidents of prison life." T.C.A. §41-21-236 (7).

5. Defendant Phillips violated plaintiff due process rights by disapproving the panel's recommendation that he be released from segregation because the duration of (17) years, the placement disqulifies him for parole consideration, taken together they impose an atypical and significant hardship within the correctional context, implicate a liberty interest.

6. Defendant Phillips shall not certify the plaintiff as eligible for a parole grant hearing because the plaintiff is classified as maximum custody. The decertification shall continue for a "duration" of the classification and for a period of two (2) years thereafter.

7. On June 11, 2015, the plaintiff had a hearing set to meet the board of parole but was taken off the docket because of his maximum custody level, that defendant Phillips continue segregation affect the overall duration of the plaintiff sentence.

8. The plaintiff has an liberty interest in sentence credits and parole consideration because (17) years of segregation has denied these interest to keep defendant Phillips from sending the plaintiff to federal custody based on detainer is an atypical and significant hardship in relation to the ordinary incidents of prison life. T.C.A. § 40-35-501 (n)(2)

9. On May 9, 2016, the plaintiff was given a job as cleaner, commercial/industrial position ID: 0149, that allowed him extra time out of the cell to clean, sweep, mop, and deliver trays to inmates.

10. On August 17, 2016, c/o Brown in unit 24D at M.C.C.C. told the plaintiff that Sgt. Underwood

2

told him not let the plaintiff work because he got a lawsuit filed against warden Phillips, constituted retaliation against the plaintiff for the complaint.

11. Defendant Phillips told Sgt. Underwood not to let the plaintiff work pursuant to position ID: 0149 because plaintiff filed lawsuit is retaliation in violation of First Amendment rights of the plaintiff to file complaints against prison officials.

12. Defendant Phillips took an adverse action against the plaintiff by tell Sgt. Underwood not to let him work because of his lawsuit, that's conduct protected by the First Amendment for the plaintiff to file own his behalf.

13. The plaintiff is not allowed to work is retaliation by defendant Phillips for filing lawsuit is an adverse action against the plaintiff that is "capable of deterring the plaintiff of ordinary firmness" from exercising his constitutional right to file complaint against prison officials.

14. Defendant Phillips have policies in place to allow the plaintiff to work in segregation, the fact that Brown and Underwood disregarded Phillips policies in carrying out his duties, it evinces intentional negligence in the performance of those duties, which makes defendant Phillips answerable for Underwood actions under the doctrine of respondeat superior. Index #504.04, 505.07.

14. Sgt. Underwood telling c/o Brown not to let the plaintiff out the cell to work is an adverse action because not working keep him lock-down in the cell, when him should be out from 2:00 pm to 9:00 on the schedule days.

3

15. In April, May, June, July, and August 2016, the penal continued the plaintiff segregation, defendant Phillips have not given the plaintiff a copy of his action for approved panel recommendation for these months is an adverse action because the policy require a copy to the inmate. Index #404.10(B)(3).

16. On August 18, 2016, the plaintiff filed grievance that he is not allowed to work any more because he got a lawsuit against defendant Phillips is retaliatory motive based on evidence of temporal proximity, the white inmate work his schedule days of the plaintiff is disparate treatment of similarly situated individuals, evinces a retaliatory motive based on the fact that no white inmates worker filed complaints against the staff for being abusive.

17. Defendant Phillips is deliberately indifferent to the plaintiff (17) years in segregation isolation that has caused substantial psychological damage that he has deprived of the minimal civilized measure of life necessities of therapy, a "basic human need."

18. The plaintiff have been choke by officers, that defendant Phillips failed to take action, fell in the cell injury back physical from shower water running (3) days non-stop, mind deterioration, no clothing, personal hygiene, no bedding, blankets, no food for (8) days at M.C.C.C., that he have been subjected to physical injury as a result of actual conditions in segregation unit.

17. The plaintiff (17) years of segregation lockdown has deprived him of exercise, sleep, social contact, and environmental stimulation of a relationship, the basic human needs, the indefinitely lockdown cumulatively and durationally has caused him a "serious" deprivation of basic needs of adequate exercise and sleep.

4

18. Defendant Phillips is deliberately indifferent to the serious medical harm (17) years segregation has cause the plaintiff anxiety, depression, anger, perceptual distortions, obsessive thoughts, paranoia, and psychosis, that has expose plaintiff to substantial risk of medical harm.

19. On August 19, 2016, the plaintiff reflection in the mirror told him "to come to the other side, they can't hurt us no more", imminent danger of physical injury. 28 U.S.C. §1915(g).

20. Defendant Phillips knows reviews by the panel have not been signed pursuant to Index #404.10(B)(3), that his failure to release plaintiff to general population based on violation of policy denied due process and diliberate indifference to the plaintiff, because (17) years segregation of plaintiff with serious mental illness violates basic tenets of mental health treatment.

21. Defendant Phillips is directly involved in the review and approve to transfer the plaintiff to federal custody under the ICC constitute he was personally involved in the unconstitutional activity of a subordinate to keep the plaintiff in segregation violated due process.

22. Defendant Phillips pursuant to T.C.A.§41-21-204, Health care and treatment; psychological services, show that he is directly involved in the decisions regarding segregation mental health treatment of the plaintiff at M.C.C.C., Index#113.30 and 113.80, constitute he was personally involved in the unconstitutional activity mental health staff of the plaintiff in segregation based on regulation and care of inmates.

5

23. Defendant Phillips reason for not release the plaintiff from segregation after (17) years is "Security Risk in G.P.", that's the same reason of a subordinate for not transfer to federal custody, "where an inmate is a security issue", taken together they impose "an atypical and significant hardship" in relation to contiune segregation, because the subordinate reason contradict defendant Phillips denied due process.

24. The plaintiff have a liberty interest in the ICC statute because transfer to federal custody, he will be off segregation, he will get credit on his sentences and he "consent" pursuant to T.C.A § 41-23-102, that the denial and contiuned segregation impose "an atypical and significant hardship" taken together within conditions of confinement, based on segregation.

25. Defendants Phillips did not actually consider releasing plaintiff from segregation by perfunctory review and rote reiteration of (security risk) denied due process because stale justifications, not "meaningful reviews, sham or fraud and hollow formality" that deprived plaintiff of the minimal civilized measure of life necessities constitutes deliberately indifferent that violate the Eighth Amendment.

26. Defendant Phillips contiuned segregation of the plaintiff denies him sentence credits, that cause him to do day for day that has extended his sentence in an unexpected manner that alter the 45% violated due process, that has imposed an atypical and hardship significant on plaintiff. T.C.A.§ 41-21-236(7).

Claims For Relief:

27. The actions of defendant Phillips in contiuned (17) years of segregation is excessive isolated confinement has denied due process, were done maliciously

Case 3:16-cv-00250-RLJ-DCP   Document 20   Filed 08/25/16   Page 6 of 19   PageID #: 181

6

and sadistically that constituted cruel and unusual punishment in violation of the Fourteenth and Eighth Amendments of the United States Constitution. The tort of intentional infliction of emotional distress constitute intentional negligence under the law of Tennessee.

28. The actions of defendant Phillips telling Sgt. Underwood not to let the plaintiff work because of lawsuit filed against Phillips constituted "retaliation" against the plaintiff engaged in protected conduct of filing §1983 against prison officials that violate the plaintiff First Amendment rights and deliberately indifferent thats cruel and unusual punishment in violation of Eighth and Fourteenth Amendments of the United States Constitution.

29. The failure of defendant Phillips and staff to allow the plaintiff to work the program assigned job because of lawsuit against Phillips was an adverse action against the plaintiff that is "capable of deterring the plaintiff of ordinary firmness" from exercising his constitutional rights to file complaint against prison officials violated the First, Fourteenth Amendments of the United States Constitution.

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. Defendant Phillips denial of release to general population of the plaintiff (17) years segregation violated due process under the Fourteenth Amendment to the Constitution and constituted intentional negligence under state law.

2. Defendant Phillips telling Sgt. Underwood, tell

c/o Brown not to let the plaintiff work because of lawsuit against Phillips was "retaliation" against plaintiff engaged in protected conduct of filing complaint against prison officials violated First and Fourteenth Amendments to the Constitution and constituted intentional negligence under state law.

B. Issue an injunction ordering defendant Phillips or his agents to:

1. Immediately release the plaintiff from administrative segregation to general population and transfer plaintiff to federal custody to begin his sentence.

2. Immediately arrange for the plaintiff to have a hearing with the board of parole once release to general population to be consider to parole to federal sentence.

C. Award compensatory damages in the following amounts:

1. $125,000 jointly and severally against defendant Phillips for physical and emotional injuries sustained as a result of the plaintiff (17) years segregation.

2. $55,000 jointly and severally against defendant Phillips for "retaliation" against the plaintiff by not allow him to work on segregation for filing lawsuit against him.

D. Award punitive damages in the following amounts:

1. $25,000 against defendant Phillips.

2. $17,000 against defendant Phillips.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

<u>8-22-16</u>
Date

Respectfully submitted,
*/s/ Mike Settle*
Mike Settle
M.C.C.C. <u>24-D-205</u>
P.O. Box 2000
Wartburg, Tn. 37887

<u>Certificate of Service</u>

I certify that a true and exact copy of the foregoing was sent by U.S. Mail to:

Office of Clerk
800 Market St.
Knoxville, Tn. 37902

Office Atty. General
P.O. Box 20207
Nashville, Tn. 37202

<u>8-22-16</u>
Date

*/s/ Mike Settle*
Mike Settle

West's Tennessee Code Annotated Currentness
Title 41. Correctional Institutions and Inmates
 Chapter 21. Inmates
  Part 2. Regulation and Care of Inmates
→ § 41-21-236. Time reduction credits

(a)(1) Those persons committed to the custody of the department of correction shall be assigned to work, educational and/or vocational training programs when positions in those programs are available.

(2)(A) Each inmate who exhibits good institutional behavior or who exhibits satisfactory performance within a program may be awarded time credits toward the sentence imposed, varying between one (1) day and sixteen (16) days for each month served, with not more than eight (8) days for each month served for good institutional behavior and not more than eight (8) days for each month served for satisfactory program performance in accordance with the criteria established by the department.

(B)(i) In addition to the time program performance credit awarded pursuant to subdivision (a)(2)(A), the department shall provide an educational good time credit of sixty (60) days to any qualifying prisoner who successfully receives a graduate equivalency diploma (GED) or a high school diploma, a two-year or four-year college degree, or a two-year or four-year certification in applied sciences, or who receives a vocational education diploma as provided and defined by the department. No credit shall be given for any diploma, degree or certification unless the particular course of study, including the institution or entity through which it is offered, has received the prior approval of the department. A qualifying prisoner may receive no more than one (1) credit of sixty (60) days, regardless of the number of programs completed.

(ii) It is the legislative intent that this credit be implemented by the department in a manner that maximizes the potential of prisoners who will return to the community to become working and productive members of society through the benefit of their educational programs or certificate. It is further the legislative intent that existing educational and vocational programs offered by the department shall not be increased in size as a result of the provisions of this subdivision (a)(2). Priority in enrollment in existing educational and vocational programs shall be given to prisoners who will be eligible for parole or release upon completion of their sentence and who can reasonably be expected to re-enter the workforce. Priority in enrollment shall also be given to prisoners who will try to be incarcerated by the department for such period of time that they will receive the full credit for sentence reduction provided in this subdivision (a)(2). Once these priorities have been met, enrollment in educational and vocational programs by other prisoners shall be available on a space-available basis, without any sentence reduction credit for any diploma or certification received.

(iii) The provisions of this subdivision (a)(2)(B) permitting an additional sixty (60) days of educational credit for obtaining a diploma shall not apply to any prisoner convicted of an offense that requires service of at least eighty-five percent (85%) of the sentence under § 39-13-523.

(C) No inmate shall have the right to any such time credits, nor shall any inmate have the right to participate in any particular program, and may be transferred from one (1) assignment to another without cause. The provisions of this section shall also apply to any inmate sentenced to the department of correction who is being held on a contract basis by a private correctional corporation.

(D) The sixty (60) days of educational good time credit authorized by subdivision (a)(2)(B) shall also apply to any inmate who successfully received one (1) of the degrees specified in subdivision (a)(2)(B) prior to July 1, 2006, as well as those receiving degrees after July 1, 2006.

---

(3) Sentence credits shall not be earned or credited automatically, but rather shall be awarded on a monthly basis to an inmate at the discretion of the responsible warden in accordance with the criteria established by the department, and only after receipt by the warden of written documentation evidencing the inmate's good institutional behavior or satisfactory program performance or both.

(4) Sentence credits may not be awarded toward a period of less than one (1) calendar month or for any month in which an inmate commits a Class A disciplinary offense of which the inmate is found guilty. No sentence credits for good institutional behavior may be awarded for any month in which an inmate commits any disciplinary offense of which the inmate is found guilty.

(5) An inmate may be deprived of those sentence credits previously awarded pursuant to this section only for the commission of any major infraction designated by the department as a Class A disciplinary offense, including, but not limited to, rape, arson, riot, escape or assault with a deadly weapon, or refusal to participate in an assignment.

(6) The refusal of an inmate to participate in any assigned work, educational or vocational training program shall constitute a disciplinary offense for which the inmate can be penalized by the loss of sentence credits previously awarded.

※ (7) Sentence credits shall not be earned or credited to any inmates classified as maximum security or being held in punitive segregation.

(b) The allowances that can be awarded pursuant to this section shall be referred to as inmate sentence reduction credits and shall affect release eligibility and sentence expiration dates in the same manner as time credits affected parole eligibility and sentence expiration dates prior to September 1, 1980.

(c)(1) Any provision of title 40, chapter 35 to the contrary notwithstanding, persons convicted under that chapter may be awarded sentence reduction credits as set forth in this section.

(2) Any provision of titles 39 and 40 to the contrary notwithstanding, all persons who commit Class X felonies on or after December 11, 1985, shall be eligible for the sentence reduction credits authorized by this section.

(3) Any person who committed a felony, including any Class X felony, prior to December 11, 1985, may become eligible for the sentence reduction credits authorized by this section by signing a waiver, in writing, of the right to serve the sentence under the law in effect at the time the crime was committed. However, sentence reduction credits authorized by this section may be awarded only for conduct or performance from and after the date a person becomes eligible under this subsection (c).

(d) Sentence reduction credits for good institutional behavior as authorized by this section shall likewise apply in accordance with the terms of this section, and under the criteria, rules and regulations established by the department, to all felony offenders serving sentences of one (1) or more years in local jails or workhouses and to all inmates serving time in county jails or workhouses because the inmate's commitment to the department has been delayed due to invocation of the governor's emergency overcrowding powers or through an injunction from a federal court restricting the intake of inmates into the department. When this section is applied to those offenders, references to "warden" in this part shall be deemed references to the superintendent or jailer, as appropriate. Such felony offenders shall not be eligible to receive any other sentence credits for good institutional behavior; provided, that, in addition to the sentence reduction credits for good institutional behavior as authorized by this section, such felony offenders may receive any credits for which they are eligible under chapter 2 of this title for work performed or satisfactory performance of job, educational or vocational programs.

(e)(1) Sentence reduction credits for good institutional behavior as authorized by this section shall also be awarded to all convicted felons for the time incarcerated prior to the imposition of sentence. The total credit to which a convicted felon may be entitled shall be calculated by determining the

Case 3:16-cv-00250-RLJ-DCP   Document 20   Filed 08/25/16   Page 10 of 19   PageID #: 185

(5) When an inmate is in more than one program in any month, all supervisors are required to evaluate that inmate's performance in those programs. Only one entry will be made based on a compilation of evaluations. In cases of institutional transfer, the appropriate amount of credits will be forwarded by the IJC, using e-mail (LSWA) to the IJC at the institution housing the inmate.

(6) If an inmate is incapable of performing within his/her assigned program as a result of injuries received while participating in the program, he/she shall continue receiving program credits until the medical staff determines that he/she may return to a suitable program. This applies only to those situations wherein the injury was ruled accidental and not of a type for which the inmate could have been removed from the program. The injury must have been received while the inmate was performing tasks within the scope of his/her job duties. The inmate need not be returned to the same program in which he/she was assigned at the time the inmate was injured.

(7) Time missed from program participation for authorized/payable reasons listed in Policy #504.04 will be counted towards an inmate's participation time in that month for the purposes of determining eligibility to receive program credits.

(8) Time missed from program participation for unauthorized/non-payable reasons listed in Policy #504.04 will not be counted towards an inmate's total participation time in that month for the purposes of determining eligibility to receive program credits.

g. Inmates are not authorized to receive PSRC (or are authorized to receive such credits only on a limited basis) under the following conditions:

(1) Behavior and program PSRC will not be awarded for any month in which an inmate is convicted of a Class "A" disciplinary offense, including bonus behavior credits. (CR-3224 is not required to notify the inmate of the denial of credits). Any inmate convicted of a disciplinary offense for refusing to provide a blood specimen for DNA testing shall not be awarded behavior sentence credits, including bonus behavior credits, each and every month until such time he/she provides the specimen. The Warden shall send a memorandum to the manager of SCS stating that the inmate will not receive behavior credits until further notice. At such time that the inmate provides a blood specimen for DNA testing, the Warden shall notify the manager of SCS in writing.

(2) Educational Good Time Credits will not be credited to an inmate who is classified as maximum custody or who is in punitive segregation. If an inmate completes an educational/vocational course and passes the requirements prior to being placed on maximum custody or in punitive

  4. The warden (and/or CD at privately managed facilities) directs a review of the inmate's status for administrative purposes;

  5. The inmate's current disciplinary conviction record suggests the need for increased supervision.

G. The correctional classification coordinator (CCC) is responsible for:

  1. Maintaining an accurate tickler file (may use INFOPAC report Class/Reclass Schedule List, BI01MHB, or other manual system), which accounts for each inmate permanently or temporarily assigned to the facility, indicating the next reclassification hearing due date.

  2. Ensuring that reclassification hearings are scheduled and completed within established time frames.

  **3.** Ensuring the accuracy and appropriateness of the CAF and the panel's recommendations for custody, program, and facility assignment, as well as the timely and accurate entry of TOMIS data on LCLN, including the completion of Option 3 with necessary recommendations and assignments.

  4. At privately managed facilities, the CD must review for approval all classification actions, which involve custody increase, custody decrease, override, or institutional transfer. (See TDOC Policy #9401.08 until it is incorporated into #401.08.)

    a. The CD has the responsibility of periodically reviewing the CAF scores for accuracy with regard to criminal conviction history reports generated by FBI/NCIC.

    b. When the CD observes an incorrect CAF criminal history rating, an initialed/dated correction shall be made on the form and the matter referred back to the CCC for any necessary action.

  4. Ensuring that recommendations for custody changes and transfers are clearly explained on the classification summary prior to being forwarded to the final approving authority.

H. Appearances before the disciplinary board, protective custody panel, or administrative segregation review panel are not counted as reclassification hearings.

I. Placement in administrative segregation precludes reclassification until the inmate is released from that status. (See TDOC Policy #404.10. Privately managed facilities adhere to Policy #9404.10 until it is incorporated into #404.10.).

J. For the purpose of population management, the Director of Classification Programs/designee may order a change of facility assignment for a specific number of inmates. Targeted institutions will be notified by email to effect these changes.

  1. If the inmate's custody level changes, a reclassification hearing is required.

B. Review of AS Inmates:

1. Periodic reviews by the administrative review panel shall be provided to determine whether or not release from AS should occur. When reviewing an inmate's case for possible release from AS, the panel should consider the following factors in making the determination:

    a. The inmate's complete institutional disciplinary record
    b. Past criminal record
    c. Past record of incarceration
    d. Criminal activity in prison
    e. Attitude towards authority
    f. Institutional record on work assignment
    g. Adjustment to program (period of segregation)
    h. Willingness and ability to live harmoniously among others
    i. Record of violent reactions to stressful situations
    j. Existence of condition(s) which initially required segregation
    k. Involvement in security threat group activity, if applicable.

2. Every seven days from date signed by approving authority, an inmate's status will be reviewed by the administrative review panel or other authorized staff designated by the Warden during the first two months in AS. The $4^h$ and 8th week reviews shall be in accordance with VI. (B)(3) below. Weekly reviews are documented on Contact Notes (LCDG) (Code: ASRV) and shall include a summary of the inmate's adjustment as well as panel members present.

3. A hearing before the administrative review panel should occur at least once every 30 calendar days, and recommendations shall be documented on the AS Review Report, BI01D084, and forwarded to the Warden. Monthly panel hearings are to be documented on Offender Findings (LCLF) (Code: AS). The Warden will review the recommendations of the panel and make the final decision. If the Warden believes the inmate should remain under AS where the panel has recommended release, there shall be a detailed statement of reasons prepared with a copy provided to the inmate. At privately managed facilities, the CD shall review the matter for approval. (See VI.(A)(6) when denied)

4. All hearings at the institutional level shall be conducted with the inmate present unless the inmate's presence would cause concern for security or safety reasons, or the inmate refuses to attend, which shall be documented).

5. In cases of the panel recommending release from AS for four consecutive months, where the Warden has believed it necessary to continue segregation, the Warden shall forward all relevant documentation, including the reasons for the initial placement, to the Director of Classification. Within ten working days, the Director shall convene an administrative review of the case with the Assistant Commissioner of Operations. The decision of the administrative review is final. Copies of the panel's decision shall be forwarded to the Warden and inmate.



State of Tennessee
DEPARTMENT OF CORRECTION
Division of Adult Institutions
West Tennessee State Penitentiary
P.O. Box 1150; 480 Green Chapel Rd.
Henning, Tennessee 38041-1150
TELEPHONE (731) 738-5044 - FAX (731) 738-5947

## MEMORANDOM

TO: Inmate Population

FROM: Jason E. Gilbert, Grievance Chairperson

DATE: January 06, 2014

SUBJECT: TDOC POLICY 501.01, NON-GRIEVABLE ISSUES

VI, C, 1...................Time Limit Expired
VI, C, 1...................Multiple Issues
VI, H, 1...................Disciplinary (W/INC. #)
VI, H, 2...................Outside Agency (USPS/ITS/ETC.)
VI, H, 3...................Classification
VI, H, 4...................Sentence Credits
VI, H, 5...................Requesting Compensation
VI, H, 6...................Sentence Structure
VI, H, 7...................Visitor Behavior
VI, H, 8...................Medical Diagnosis, Requirements of the
                         Therapeutic Community, and Medical Co pays.
VI, H, 9...................STG Program Placement
VI, H, 10..................Mail Rejection
VI, I, 1...................Same/Similar (W/#)
VI, I, 3...................Profanity, Insults, Racial Slurs, and Threats.

Note: Inmates have the right to file a grievance on any of the above issues; however, a grievance found to be Non-Grievable will be deemed Inappropriate. (See Policy 501.01 Section H)

Seeking monetary compensation for injuries or property loss is a matter inappropriate to the grievance procedure. Monetary claims against TDOC or its employees based upon alleged negligent care of individuals or personal property should be filed with the Tennessee Claims Commission pursuant to T.C.A. 9-8-101 et. seq.

Thank you for your cooperation in this matter.

_/s/ Jason Gilbert_

**Cpl. Jason E Gilbert**
**Grievance Chairperson**

TOMIS ID: 00207584  SETTLE, MIKE
  Status: ACTV   Sex: M   Race: B   Age: 47   DOB: 03/22/1969

Institution Name:  MORGAN COUNTY CORRECTIONAL COMPLEX

Job/Class Name:  CLEANER, COMMERCIAL/INDUSTRIAL
Section ID:            Position ID:  0149

Job Desc:   SWEEPS AND MOPS ON A DAILY BASIS. BUFF FLOORS AS NEEDED.
            CLEAN, DUST AND DISINFECTS EMPTY ROOMS AS NEEDED. CLEAN
            OFFICES AND RESTROOMS AS NEEDED. MAY DELIVER TRAYS TO
            INMATES. WILL PERFORM OTHER DUTIES ASSIGNED BY UNIT MANAGER
            OR OTHER STAFF. UNIT MANAGER WILL HAVE INPUT FOR INMATE JOBS
            JOBS IN HSHU. OFF DAYS & HOURS MAY BE CHANGED AS NEEDED.
            2ND SHIFT              ............CLOSE SECURITY CUSTODY.

Report to:   STEWART, KRISTOPHER

Report Location
Unit ID:           Room:
Work Area:   UNIT TEAM 6

Pay Period:  HOURLY           Pay Rate:  _____   Incentive Pay (Y/N): N

Schedule
--------
Start Date: 05/09/2016       Time From:  02:00 PM    To: 09:00 PM
End Date  :                  Time From:              To:

Day of the Week
---------------
Monday       X
Tuesday      X
Wednesday    X
Thursday     X
Friday
Saturday
Sunday       X

# RE: I/M Settle #207584

Sarah L. Campbell
Sent: Thursday, June 11, 2015 3:08 PM
To: Mathew B. Paisley

He's not on the docket because of his maximum custody level.

Thanks
Sarah

Sarah Campbell, IPPO

Lois M. Deberry Special Needs Facility

TDOC

7575 Cockcrill Bend Blvd

Nashville, TN 37209

ph (615) 350-3848

fax (615) 350-2756

sarah.l.campbell@tn.gov

---

From: Mathew B. Paisley
Sent: Thursday, June 11, 2015 10:22 AM
To: Sarah L. Campbell
Subject: I/M Settle #207584

Hello-
Inmate Settle has been inquiring and has shown me documents that indicate he was to be on the docket for parole this month. Is there a reason he was on included on the docket? He has not received notification as to any changes that may have been made regarding his case. Any input would be greatly appreciated.

Matthew Paisley, Unit 1 Counselor

Riverbend Maximum Security Institution

7475 Cockrill Bend Blvd.

Nashville, TN 37243

(615)350-3611

T. C. A. § 41-21-204

West's Tennessee Code Annotated Currentness
Title 41. Correctional Institutions and Inmates
 Chapter 21. Inmates
  Part 2. Regulation and Care of Inmates
   ➔§ 41-21-204. Health care and treatment; psychological services

<Text of section effective until January 1, 2011. See, also, section effective January 1, 2011.>

(a) All inmates at their reception and at such times thereafter as may be deemed necessary shall be examined by a physician for the purpose of determining their status of health.

(b) The medical director shall conduct a daily outpatient clinic. Any inmate who is ill shall receive proper medical treatment.

(c)(1) The physician shall, acting under and subject to the power of the commissioner of correction, visit the penitentiary in the discharge of duties as often as may be necessary, prescribe for inmates who may be sick, and attend to the regimen, clothing and cleanliness of such of them as are in the hospital, and report to the commissioner any failure on the part of the warden to provide fully for their necessary wants.

(2) The physician shall keep a regular journal, to be left in the penitentiary, stating the time of all admissions to the hospital, the nature of the disease, and the treatment of each patient, the time of the patient's discharge from the hospital or of the patient's death.

(3) The physician shall keep a register of all the inmates under the physician's charge, stating their diseases, the cause thereof when practicable, and the state of their health on entering and leaving the hospital. The physician shall also keep a register of all infirm inmates, giving their names, ages, places of birth, and the particular infirmity of each. The register shall always remain in the hospital, open to inspection.

(d) The commissioner may remove the inmates in the penitentiary to such place of security in this state as the commissioner may think best, if, in the commissioner's opinion, the prevalence of any epidemic, infectious, or contagious disorder, or other urgent occasion, renders it expedient and proper.

(e) Any inmate who is sick at the expiration of the term of imprisonment shall not be discharged until the inmate's health is restored, except at the inmate's request.

(f)(1) To the extent necessary, the department of correction may contract with the department of mental health and developmental disabilities to ensure that psychological services are available at an adequate level and quality for all inmates who are in the department's custody and who are in need of those services but who do

MEMORANDUM

TO ALL STAFF AND INMATES IN HSHU:

HSHU sick call will begin around 6:30 AM each morning. When the nurse arrives, security will announce in each area entered. If you wish to access sick call, you will be on your door, dressed, and have the light on when the nurse arrives at your door. There will no running back and forth by the nurse so you must be ready when they arrive at your door. Morning medications will be done at the same time.

As you are aware there are three areas in HSHU (24, 25 and 26). Naturally the nurse cannot be in all three areas at the same time, so individual areas may vary in time depending on which area the nurse begins on any particular morning.

Any worker who is out and wishes to access sick call should let the nurse know when they enter the area the worker is in. The nurse shall complete the routine sick call and let security know that the worker needs sick call and security shall bring the worker to the nurse for the sick call.

All medical problems will be addressed through your routine sick call.

✶ <u>Any emergency should be reported to security, who will call the clinic and talk to a nurse.</u> The nurse will give security instructions regarding that particular complaint. If the nurse determines there is an emergency, you will be seen then. If the nurse determines this is not a medical emergency, you will be instructed to sign your sick call.

Anyone receiving KOP monthly medications should sign their sick call when they have 7 days left of the medication. Note it is for monthly medications on the sick call roster. These medications will be obtained at that time and brought to HSHU and issued. By your doing this, we can help prevent anyone running out of monthly medications.

*[signature] AHA*
*10-10-09*


**TN Department of Correction**

July 29, 2015

Mr. Mike Settle # 207584
Riverbend Maximum Security Institution
7475 Cockrill Bend Blvd
Nashville, TN 37243

Dear Mr. Settle:

Your petition for transfer to federal custody, in accordance with the Interstate Corrections Compact (ICC), has been referred to the Department of Correction, Office of the General Counsel, by the Commissioner. I have been assigned to review and respond to your petition on behalf of the Commissioner.

The Department is only considering transfers, in accordance with the Interstate Corrections Compact (ICC), where an inmate is a security issue and the Department's chain of command has not informed this office that you are a security issue.

Also, in accordance with the federal judgment order, that you provided, your federal sentence was ordered to run consecutive to your state sentence, as ordered by the court of jurisdiction.

Therefore, the Department respectfully denies your petition to transfer in accordance with the Interstate Corrections Compact (ICC).

Sincerely,

Douglas Stephens
Detainer Administrator
Office of the General Counsel

cc: Institutional File

Department of Correction • 6th Floor Rachel Jackson Building • 320 6th Avenue North • Nashville, TN 37243 • Tel: 615-741-1000 • Fax: 615-532-8281 • tn.gov/Correction

Case 3:16-cv-00250-RLJ-DCP   Document 20   Filed 08/25/16   Page 19 of 19   PageID #: 194