UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MIKE SETTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16-CV-250-RLJ-CCS |
| | ) |
| SHAWN PHILLIPS, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Mike Settle, a state prisoner who was formerly represented by appointed counsel but is now acting pro se, is the plaintiff in this civil rights case for monetary, declaratory, and injunctive relief under 42 U.S.C. § 1983 [Doc. 1]. The sole defendant is Shawn Phillips, the Warden at the Morgan County Correctional Complex ("MCCX"). The case is before the Court on three motions—Defendant's motion for summary judgment and supplement to the motion [Docs. 41 and 68], Defendant's motion to extend time to file a dispositive motion [Doc. 72], and Plaintiff's "Motion for Supplement Pleadings" [Doc. 74]. For reasons expressed below, the Court will **GRANT** Defendant's dispositive motion, **DENY** Defendant's motion for a time extension as moot, and **DENY** Plaintiff's motion to file a supplement.

## I. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Background

The facts of this case are set forth in the screening order [Doc. 7]. To summarize briefly those facts, Plaintiff alleged that he was suffering severe psychological damages from seventeen years of indefinite confinement in administrative segregation and that, on March 3, 2016, Defendant disapproved of a panel's recommendation that Plaintiff be released from administrative

segregation [*Id.* at 5-6]. Plaintiff also maintained the Defendant did not provide a detailed statement of reasons for disapproving the recommendation, as required by prison policy [Doc. 1 at ¶ 16, Doc. 1-2 at 3, ¶ B.3]. The screening order allowed only Plaintiff's procedural due process claim to advance in the lawsuit [Doc. 7]. Other claims asserted in an amended complaint likewise were permitted to advance, including a claim that Plaintiff's continued confinement in administrative segregation also violated his rights under the Eighth Amendment; a claim that Defendant told an officer not to allow Plaintiff to work because Plaintiff filed this lawsuit (a retaliation claim); and a state law claim for intentional infliction of emotional distress [Doc. 35].

Defendant moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing this action [Doc. 41.] Plaintiff responded by asserting that his complaints regarding administrative segregation were not grievable and that he need not exhaust administrative remedies where none existed [Doc. 64]. The Court issued an order addressing Defendant's dispositive motion, setting forth the summary judgment standard, the law on exhaustion of administrative remedies, and the factual circumstances of the case [Doc. 65].

The Court determined that Plaintiff had not exhausted his administrative remedies on all claims and that it needed additional information as to whether he had an available remedy for one claim [Doc. 65 at 5-6]. Therefore, the Court ordered Defendant to supplement his motion to supply that information [*Id.* at 6-7]. More specifically, the supplement to the dispositive motion was intended to clarify whether, given the exclusion of matters related to institutional placement and custody level as appropriate subject matter of grievances, "TDOC's grievance system provided a

vehicle for Plaintiff's complaint about his extended period in administrative segregation" [*Id.*].[1] Defendant responded by filing both a supplement and a supporting affidavit [Docs. 68-69].

Plaintiff submitted a reply to Defendant's response and supplement, as well as his own declaration [Doc. 76]. The Court does not find that Plaintiff has presented sufficient evidence of exhaustion of administrative remedies to overcome Defendant's summary judgment showing. Rather, the Court concludes that Defendant has satisfied his burden of substantiating that Plaintiff failed to exhaust his available administrative remedies [Docs. 68-69].

### B. Legal Standards

Summary judgment will be granted with respect to Defendant's motion, as long as what is before the Court by way of pleadings, declarations, cited materials, records, and other pertinent documents demonstrate that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is appropriate to grant summary judgment based on an alleged failure to exhaust administrative remedies "only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Mattox v. Edelman*, 851 F.3d 583, 589-90 (6th Cir. 2017) (quoting *Risher v. Lapin*, 639 F.3d 236, 240 (6th Cir. 2011)).

Moreover, a defendant's "initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (citation and internal quotation marks omitted). Stated differently,

---

[1] *See* TDOC Policy 501.01(VI)(H) (providing that classification matters such as institutional placement and custody level are inappropriate matters for grievances which may be appealed through other avenues outlined in the #400 policy series) [Doc. 43, Affidavit of Benjamin Bean at 32].

3

Defendant "must prove that no reasonable jury could find that that the plaintiff exhausted his administrative remedies." *Mattox,* 851 F.3d at 590 (citing *Surles*, 678 at 455-56).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). Irrespective of the forms of relief sought or offered through the administrative avenue, including monetary damages, the statute requires a prisoner to exhaust his administrative remedies. *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).

**C.     Analysis**

The § 1997e(e) requirement applies to Plaintiff's claim that, on March 3, 2016, Defendant disapproved an administrative segregation review panel's recommendation that Plaintiff be released to general population and that Defendant did not provide a detailed statement of reasons for the disapproval, as required by TDOC Policy 404.10(B)(3) [Doc. 1 at 6-7, Doc. 1-2 at 3, ¶ B.3]. The exhaustion-of-administrative-remedies requirement also applies to Plaintiff's claim that his confinement in administrative segregation and the conditions to which he was exposed violated the Eighth Amendment [Docs. 20 and 35 at 4].[2]

To rebut Defendant's assertion that Plaintiff failed to exhaust administrative remedies, Plaintiff maintains that he offered his claim to the prison authorities using the institutional grievance system, but that the grievance was returned to him "as inappropriate grievance" [Doc.

---

[2] Only those claimed wrongful conditions to which Plaintiff allegedly was exposed in the administrative segregation unit at the MCCX, where Defendant was Warden, are proceeding in this lawsuit. Moreover, only the conditions existing in the MCCX administrative segregation unit on and after July 25, 2015, when Plaintiff arrived in that unit, are at issue [Doc. 1-2 at 2]. Clearly, any wrongful conditions under which Plaintiff was confined at other facilities cannot be attributed to Defendant.

4

76 at 1-3]. Plaintiff insists that TDOC Policy 501.01(VI)(H)(3), which prohibits the submission of more than one grievance arising out of the same or similar incident, together with the filing of the prior grievance contesting his housing in administrative segregation, suffices to show that there was a "flat rule" against presenting such claims in a grievance [*Id.* at 2].

The issue thus becomes whether Plaintiff had an "available" administrative remedy for his complaints regarding administrative segregation or whether TDOC has a policy that imposes a "flat rule" against pursuing such claims in a grievance and, thereby, renders that remedy unavailable.

To show that the administrative grievance system is unavailable, an inmate may demonstrate: (1) that the grievance system operates as a "dead end," in that officers are unable or consistently unwilling to provide relief; (2) that it is "so opaque" that no ordinary inmate can discern or use it; or (3) that prison officials thwart inmates from taking advantage of the grievance process through "machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016) (listing three circumstances that can make a grievance procedure unavailable). The existence of any of these circumstances renders that process unavailable. *Id.*

Plaintiff correctly argues that a prisoner need not pursue an administrative remedy "where the prison system has an across-the-board policy declining to utilize that [administrative] remedy for the type of claim raised by the prisoner" [Doc. 76 at 3]. *See id.* at 1856 (holding that there are "no limits on an inmate's obligation to exhaust" but that "the remedies must indeed be 'available'" to an inmate); *see also Rancher v. Franklin Cnty.*, 122 F. App'x 240, 242 (6th Cir. 2005) (excusing the exhaustion requirement based on uncontradicted evidence showing the existence of a "flat rule" against medical grievances); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999) (observing that "it makes sense to excuse exhaustion of the prisoner's complaint where the prison system has a

5

flat rule declining jurisdiction over such cases"). The Court views Plaintiff's argument about a "flat rule" as the equivalent of an allegation that filing a grievance complaining about administrative segregation would have been a "dead end" because prison officials would have been unable to grant any relief.

Not so, according to Defendant. The fact that TDOC Policy 501.01(VI)(H) sets forth matters that are inappropriate to the prison grievance process, so maintains Defendant, does not render Plaintiff's complaints about his housing in administrative segregation non-grievable [Doc. 68 at 1]. Defendant asserts that complaints about the process by which an inmate is reviewed for continued placement in administrative segregation, as well as allegations of policy violations related to such a review, may be presented through the grievance system under TDOC Policy 501.01 [*Id.* at 2]. Affidavit testimony supports that this is so [Doc. 69, Affidavit of Brad Poole].

Plaintiff has the burden of providing admissible evidence showing that no administrative remedy existed. First, Plaintiff does not say when he filed a prior grievance complaining about his confinement in administrative segregation; does not describe the contents of that grievance; and does not indicate whether he appealed the rejection of any such a grievance. As noted in a prior order, " the grievance system procedures provide that an inmate, who seeks to express a complaint and have it resolved, must file a grievance within seven days of the event prompting the grievance" [Doc. 65 at 6]. Plaintiff's due process claim arose on March 3, 2016, [Doc. 7 at 6-7], but the evidence shows that, within three years of the filing of this suit on May 5, 2016, Plaintiff did not file a grievance regarding his administrative segregation that ultimately was rejected, pursued through one round of appeal, and, thereby exhausted [*Id.* at 5-6].[3]

---

[3] Plaintiff cites to *Settle v. Bell*, No. 3:07-cv-9401, 2007 WL 4570877 (M.D. Tenn. 2007), presumably to show that he filed a prior grievance regarding administrative segregation. However, that case does not mention administrative segregation. Instead, the case involves Plaintiff's request

Second, as observed, Defendant's response supplementing his dispositive motion is supported by the affidavit testimony of Brad Poole [Doc. 69, Pool Aff.]. Mr. Poole is a TDOC correctional program director, who testifies in his affidavit that inmates placed in administrative segregation can file a grievance under TDOC Policy 501.01 and may complain about both the review process and violations of the policies related to the review process [*Id.*].

Third, as Defendant likewise points out, even where the subject matter of a grievance is found non-grievable, an inmate has a right, under TDOC Policy 501.01(B)(I), to pursue an appeal of that determination [Doc. 68 at 2-3]. According to that specific policy, "matters deemed to be . . . non-grievable at Level I may be appealed by the inmate" [Doc. 43, Affidavit of Benjamin Bean at 49].

Even if Plaintiff truly believed that he would not obtain the relief he seeks here by resorting to the grievance process, the statutory exhaustion requirements do not admit of "futility or other exceptions." *Booth*, 532 U.S. at 741, n.6 (2001). As the Supreme Court instructs, "[w]hen an administrative process is susceptible of multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion." *Ross*, 136 S. Ct. at 1859.

Plaintiff has not shown that he erred on the side of exhaustion prior to filing this instant lawsuit. Nor has Plaintiff successfully demonstrated the existence of any of the three circumstances described in *Ross, id.* at 1859-60, to show that his administrative remedies were rendered unavailable. Accordingly, Defendant is entitled to summary judgment on the claims asserted against him (except for the state law intentional-infliction-of-emotional-distress claim)

---

for an order requiring the defendants to transfer him from the Riverbend Maximum Security Institution ("RMSI") to another facility for "adequate mental health treatment." *Id.*, 2007 WL 4570877, at *1. Importantly, the claims in the instant action arose during Plaintiff's administrative segregation at *MCCX*, not while he was confined in RMSI. It would be impossible to exhaust a complaint through a prison's grievance process about an occurrence that has yet to happen.

because he has demonstrated "that there is no genuine dispute as to any material fact" as to whether Plaintiff properly exhausted his administrative remedies.[4] Fed. R. Civ. P. 56(a); *Mattox*, 851 F.3d 583) (holding that "a [p]risoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution").

### D. Other Grounds for Summary Judgment

Claims which have not been exhausted through the institutional grievance system are to be dismissed without prejudice, *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir. 2004), and thus, may be reasserted after those administrative remedies have been properly exhausted (where exhaustion is still possible). *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006). It therefore is appropriate to address Plaintiff's claims for damages against Defendant in his official capacity.

Suits against prison authorities in their official capacities under § 1983 are equated with suits against the governmental entity itself, *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992), and "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978); *see also Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (observing that an official-capacity suit proceeds as though a plaintiff had sued the governmental entity a defendant represents). Indeed, if damages are awarded in a suit against a defendant in his official capacity,

---

[4] Although the Court found that one claim (that Defendant retaliated against Plaintiff for filing this case by denying him a job) had not been exhausted through the grievance system prior to filing this lawsuit, the Court recognizes that a prisoner is permitted to amend a complaint to add a claim, where the administrative remedies were exhausted during the pendency of a suit. *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006). The Court finds that Plaintiff's grievance concerning the alleged retaliation did not exhaust the claim because Plaintiff identified the officers involved in the alleged retaliation as "c/o Brown" and "Sgt. Underwood," and not as Defendant Phillips [Doc. 42 at 6]. Moreover, the facts offered in the grievance are not the same ones offered in support of the retaliation claim [Compare *id.* with Doc. 20 at ¶¶ 11-12].

a plaintiff must look to the governmental entity to satisfy such a judgment. *Kentucky v. Graham*, 473 U.S. 159, 166 (1995).

To state a § 1983 claim, a plaintiff must show that a person acting under color of state law caused a deprivation of a federal right. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). This means that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," who are subject to suit for damages within the terms of § 1983. *Id.*; *see also Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (citing *Will*, 491 U.S. at 71).

Additionally, the Eleventh Amendment to the United States Constitution bars actions in federal court by citizens against their own state, and this bar extends to a state agency in cases where state funds are potentially involved and to its employees, when sued in their official capacities. *Will*, 491 U.S. at 71.

Thus, Plaintiff's claims for damages against Defendant in his official capacity are not alleged against "persons" within the terms of § 1983, and the part of the suit for monetary relief against Defendant in his official capacity is barred by the Eleventh Amendment.

Furthermore, Plaintiff's claims for declaratory and injunctive relief either are moot or cannot be granted. Plaintiff seeks an order requiring Defendant to arrange: (1) for Plaintiff's release from administrative segregation at MCCX and placement in general population at the West Tennessee State Prison; (2) to transfer Plaintiff to federal custody to begin his sentence;[5] and (3)

---

[5] To the extent that Plaintiff's request for a transfer or parole to a federal prison rests on the authority of the Interstate Corrections Compact ("ICC"), all ICC claims were dismissed at the

for a hearing with the Board of Parole to be considered for a parole to federal custody [Doc. 1 at 20, Doc. 20 at 7-8].

A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Here, Plaintiff presents claims for injunctive and declaratory relief from his alleged unconstitutional administrative segregation.

First, Defendant has informed the Court that Plaintiff was released from administrative segregation in December of 2017 [Doc. 72 at 2]. Plaintiff acknowledges that he is no longer in administrative segregation and that he is now confined in the Security Management Unit ("SMU") [Doc. 74 at 1]. Plaintiff insists, nonetheless, that SMU inmates likewise are in segregation and that his "mental condition [will] . . . continue to suffer as a result of segregation that denies proper mental health treatment."[6] Plaintiff argues that the fact that he is still in a type of segregation means that that his claims for release from administrative segregation are not moot and are still "live" [*Id.*]. Furthermore, so Plaintiff contends, a policy that gives the warden the authority to place an inmate in SMU likewise means that his placement in segregation is, by its nature, "capable of repetition, yet evading review" [*Id.*].

There is an exception to the mootness doctrine, which applies to extraordinary cases that are "capable of repetition, yet evading review." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Such cases exist "where the following two circumstances [are] simultaneously present: "

---

screening stage [Doc. 7 at 7]; cannot be resurrected as requests for declaratory or injunctive relief; and will not be considered.

[6] Plaintiff's claims that he was denied mental health treatment in administrative segregation were dismissed at the screening stage and cannot be reasserted [Doc. 7 at 7-8].

'(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481 (1990)).

Plaintiff's own arguments about the length of his confinement in administrative segregation cuts against a conclusion that his challenge to such confinement is too brief to be litigated before such confinement would end. Moreover, there is no basis for Plaintiff to expect that he again will be placed in administrative segregation, so long as he does not commit further offenses like the ones that led to his original placement in administrative segregation. The Court rejects Plaintiff's position as to the mootness question and finds that his request for release from administrative segregation is now moot. *See Harris v. Caruso*, 465 F. App'x 481, 482 n.1 (6th Cir. 2012) (holding that an inmate's release from administrative segregation made injunctive relief moot).

Plaintiff's second and third requests lie outside the scope of the Court's power to grant. The Court cannot direct Defendant to house Plaintiff in general population, as that is a matter for prison authorities. As the Court stated in its screening order, "[a]bsent unusual circumstances, prison officials, rather than judges, should decide where a particular prisoner should be housed. *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) [Doc. 7 at 8-9].

Likewise, Plaintiff cites to no authority that would allow the Court to order the Bureau of Prisons to take custody of Plaintiff, who is presently in TDOC custody serving a state prison sentence. Indeed, the Court lacks such power. *See Banks v. United States*, No. CV 12-2175-JPM-DKV, 2013 WL 3564135, at *3 (W.D. Tenn. July 11, 2013) (observing that the district court "has no constitutional or statutory authority to direct the Bureau of Prisons to take custody of a state prisoner or to require the state to relinquish their custody of a lawfully imprisoned inmate."). Nor

does Plaintiff have an entitlement under the Constitution or Tennessee law to parole or to a parole hearing. *Seagroves v. Tennessee Bd. of Prob. & Parole*, 86 F. App'x 45, 48 (6th Cir. 2003); *Utley v. Rose*, No. 99-5188, 1999 WL 1252880, at *1 (6th Cir. 1999). These two requests are legally frivolous because they have no basis in law. *Id.*, 1999 WL 1252880, at *1.

Since the Court lacks authority "to give opinions upon moot questions," *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992), Plaintiff's claims for declaratory and injunctive relief are **MOOT**.

### E. Conclusion

For the reasons expressed above, the Court will **GRANT** Defendant's motion for summary judgment [Doc. 41].

## II. DEFENDANT'S MOTION to EXTEND TIME

Defendant moves for an extension of time to file a supplemental dispositive motion, in the event that his summary judgment motion is denied [Doc. 72]. Defendant's motion for summary judgment is not being denied, and his motion for a time-extension [*Id.*] will be **DENIED** as moot.

## III. PLAINTIFF'S MOTION TO FILE SUPPLEMENTAL COMPLAINT

Finally, Plaintiff has moved the Court for leave to file a supplemental pleading and has submitted supporting documents and a brief [Docs. 74, 74-1, 75]. The Court liberally interprets the allegations in these collective filings as asserting that Plaintiff's transfer to the SMU also was unlawful and was effected in violation of prison policies.

Federal Rule of Civil Procedure 15(d) provides that a court may permit a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A Rule 15(d) motion to supplement calls for the same review and rationale as a motion to amend under Rule 15(a). *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th

Cir. 2002). When presented with a motion to amend, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). However, the Court may decline to grant leave to amend a complaint under Rule 15(a) if the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment "is futile if it could not withstand a motion to dismiss." *McCord v. Bd. of Educ. of Fleming Cnty., Ky.*, No. 17-5548, 2018 WL 1724560, at *6 (6th Cir. Jan. 30, 2018) (citing *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 6th Cir. 2014)).

Plaintiff maintains that he filed a grievance regarding his SMU placement but that the grievance was returned to him as inappropriate [Doc. 74, Plaintiff's Decl. at 4]. Plaintiff further maintains that he is appealing his SMU placement through means of a CR-3811, but that Defendant has not documented the decision to place him in SMU, nor forwarded the documentation to Plaintiff [*Id.*].

As noted, exhaustion of administrative remedies is mandatory and, if there is an administrative avenue that will afford review of a prisoner's complaint, then he must pursue that avenue to completion. The Court concludes that Plaintiff is in the midst of exhausting his administrative remedies with respect to his putative claim regarding SMU, but that he has not completed the process. The Court likewise concludes that it would be futile to allow Plaintiff to supplement this case with a claim that is not yet exhausted through available administrative remedies.

The motion to file a supplemental pleading [Doc. 74] will be **DENIED** as futile. *Foman*, 371 U.S. at 182.

## IV. STATE-LAW CLAIM

After entry of summary judgment on the federal claims, the only claim that will remain for disposition in this lawsuit is a claim pled under state law for the intentional infliction of emotional distress [Doc. 32 at 6, ¶ 5, Doc. 20 at ¶ 27]. A court may decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §§ 1367(c)(3). In the Sixth Circuit, the policy is to dismiss such state-law claims. *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) explaining that "[i]f federal claims are dismissed before trial, the state claims generally should be dismissed as well" (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)). Because the federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim.

Accordingly, Plaintiff's state-law claim for intentional infliction of emotional distress will be **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge